UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and
STATE FARM FIRE AND CASUALTY
COMPANY,

      Plaintiffs,

v.                            Case No.  8:21-cv-2536-SCB-AEP

MICHAEL THOMAS LAROCCA, D.C., *et al.*,

      Defendants.

_____/

# **O R D E R**

This cause is before the Court on the following:

(1)    The LaRocca Defendants' Motion to Dismiss (Doc. 48), filed
by Michael LaRocca, D.C., Blake LaRocca, Ruth Griffin, D.C.,
Michael Major, D.C., Lori Rebein, NP-C, Jason Hunt, D.C.,
Cecilio Torres-Ruiz, M.D., Savannah Mayberry, D.C.,
Antoinette Stewart, D.C., All Accidents Chiropractic Center,
LLC, LaRocca Chiropractic Centers, LLC, LaRocca
Chiropractic Injury Center, LLC, LaRocca Injury Centers, LLC,
and LaRocca Auto Injury Center, LLC (collectively, the
"LaRocca Defendants"), Plaintiffs' Response (Doc. 57), and the
LaRocca Defendants' Reply (Doc. 60);

(2)    Defendant Tobias Bacaner, M.D.'s Joinder in the LaRocca
Defendants' Motion to Dismiss (Doc. 49, p. 1);

(3)    Defendant Mounir Semia, D.C.'s Notice of Joinder in the
LaRocca Defendants' Motion to Dismiss and Reply to
Plaintiffs' Response (Doc. 64); and

(4)   Defendant Tobias Bacaner, M.D.'s Motion to Dismiss (Doc.
      49), and Plaintiffs' Response (Doc. 56).

For the reasons stated below, the LaRocca Defendants' Motion to Dismiss (Doc.

48) and Defendant Tobias Bacaner, M.D.'s Motion to Dismiss (Doc. 49) are

denied.

## I.  Background

This case involves a fraud scheme to collect millions of dollars in no-fault

automobile insurance benefits for chiropractic and medical services that were not

medically necessary or lawfully rendered. The Florida Motor Vehicle No-Fault

Law, §§ 627.730-627.7405, Florida Statutes, requires automobile insurers to

provide personal injury protection ("PIP") benefits that pay a percentage of

reasonable expenses for medically necessary services when an insured is injured in

an automobile accident.[1] *See* Fla. Stat. § 627.736(1)(a). Healthcare providers that

have a valid assignment of benefits from the insured may submit PIP claims

directly to insurance companies to receive reimbursement for medically necessary

services.[2] *See Gov't Emps. Ins. Co. v. Quality Diagnostic Health Care, Inc.*, 2021

---

[1] Section 627.736, Florida Statutes, is often referred to as the "PIP" statute. *See, e.g., MRI Assoc. of Tampa, Inc. v. State Farm Mut. Auto. Ins. Co.*, 334 So. 3d 577, __, 2021 WL 5832298, at *5 (Fla. Dec. 9, 2021).

[2] Services are considered "medically necessary" if a prudent doctor would provide the service to prevent, diagnose, or treat an injury in a manner that is "in accordance with generally accepted standards of medical practice; clinically appropriate in terms of type, frequency, extent, site, and duration; and not primarily for the convenience of the patient, physician, or other health care provider." Fla. Stat. § 727.732(2).

WL 5157535, at *1 (11th Cir. Nov. 5, 2021). Insurers are required to pay or deny PIP claims within 30 days. Fla. Stat. § 627.736(4)(b). Insurers, however, are not required to pay PIP claims for services or treatment that were not lawfully[3] rendered or to persons who knowingly[4] submit a false or misleading statement relating to the claim. Fla. Stat. § 627.736(5)(b)(1)(b)-(c).

State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company (collectively, "State Farm" or "Plaintiffs") provide automobile insurance coverage that includes PIP benefits and optional medical payment coverage ("MPC benefits") (collectively, "no-fault benefits"). (Doc. 1, ¶ 1). Plaintiffs bring this action against seventeen defendants, including twelve individuals and five clinics, that primarily treat patients involved in automobile accidents. (*Id.*, ¶¶ 13-83). The individual defendants are chiropractors Michael LaRocca, Michael Major ("Major"), Jason Hunt ("Hunt"), Antoinette Stewart ("Stewart"), Ruth Griffin ("Griffin"), Savannah Mayberry ("Mayberry"), Mournir Semia ("Semia"), and Jeffrey Raheb ("Raheb"); physicians Tobias Bacaner ("Bacaner") and Cecilio Torres-Ruiz ("Torres-Ruiz"); nurse practitioner Lori

---

[3] Lawfully is defined as "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." Fla. Stat. § 627.732(11).

[4] "'Knowingly' means that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the information, and proof of specific intent to defraud is not required." Fla. Stat. § 627.732(10).

Rebein ("Rebein"); and office manager Blake LaRocca, Michael LaRocca's son. The clinic defendants are All Accidents Chiropractic Center, PLLC; LaRocca Chiropractic Centers, LLC; LaRocca Chiropractic Injury Center, LLC; LaRocca Injury Centers, LLC; and LaRocca Auto Injury Center, LLC (collectively, the "LaRocca Clinics").[5] (Doc. 1, ¶¶ 13-83).

Plaintiffs allege the following. Beginning in at least January 2017 and continuing to date, Defendants acted in concert to obtain more than $2.1 million in no-fault benefits from State Farm by submitting thousands of false or fraudulent claims for chiropractic and medical services purportedly provided to 621 of State Farm's insureds involved in automobile accidents. (Doc. 1, ¶¶ 1, 5). Defendants effected the fraud scheme by treating patients not based on individual medical needs but pursuant to a "predetermined protocol" designed to exploit patients' eligibility for no-fault/PIP benefits and enrich Defendants.

Treatment under the predetermined protocol began with an initial chiropractic exam at one of the LaRocca Clinics. Chiropractors conducting these exams then prepared reports documenting the same or similar nonspecific complaints and findings to justify the predetermined and medically unnecessary course of treatment. Next, physicians or nurse practitioners conducted initial medical exams to confirm the patient's injuries, attribute the injuries to the

---

[5] The LaRocca Clinics are owned by Michael LaRocca.

automobile accident, support the need for the predetermined course of treatment, and diagnose an emergency medical condition ("EMC").[6] These exams were instrumental to the predetermined protocol because PIP benefits cover medical expenses up to $10,000 when a physician or nurse practitioner diagnoses an EMC but are limited to $2,500 when an EMC is not diagnosed. *See* Fla. Stat. § 627.736(a)(3), (4). Finally, to justify the continuation of the predetermined course of treatment, the protocol also included unnecessary diagnostic imaging and final medical exams to confirm the necessity of the extensive treatment at the LaRocca Clinics. (Doc. 1, ¶ 1-5, 122-27).

Based on the above, Plaintiffs initiated this action by filing a five-count complaint on October 29, 2021. In Counts I-III, Plaintiffs assert claims for fraud, civil conspiracy, and unjust enrichment under Florida common law against all Defendants. In Count IV, Plaintiffs assert a claim under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 101.201 *et seq*. ("FDTPUA") against all Defendants. In Count V, Plaintiffs assert a claim for declaratory judgment, pursuant to 28 U.S.C. § 2202, seeking a declaration that the LaRocca Clinics are not entitled to reimbursement for any of the unpaid charges submitted to State

---

[6] An EMC is defined as a medical condition presenting with acute symptoms of sufficient severity, including severe pain that absent immediate medical attention could reasonably be expected to result in serious jeopardy to patient health, serious impairment of bodily functions, or serious dysfunction of any organ or body part. Fla. Stat. § 627.732(16).

Farm for services performed at the clinics to date and through the trial of this case. (Doc. 1, ¶¶ 230-52). In support of its allegations, Plaintiffs attach forty-four exhibits, including an eleven-page spreadsheet detailing the fraudulent services Defendants provided to each of the 621 patients. (*Id.*, Exs.).

In response, the LaRocca Defendants move to dismiss the complaint on various grounds. (Doc. 48). Bacaner and Semia join in the motion (Docs. 49, 64), and Bacaner separately moves to dismiss on two additional grounds (Doc. 49).[7]

## II.  Legal Standards

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), factual allegations, accepted as true, must be sufficient "to state a claim to relief that is plausible on its face." *Id*. at 570. The court must view a complaint in the light most favorable to the plaintiff and accept

---

[7] Raheb, the only defendant not seeking dismissal, has not yet been served. State Farm has filed a motion for entry of an order authorizing foreign service of process on Raheb. (Doc. 55). That motion is addressed by separate order.

the plaintiff's well-pleaded allegations as true when considering the motion.[8]

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016).

In addition to Rule 8(a)'s short and plain statement requirement, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for claims sounding in fraud: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requirement is intended to alert defendants to the "precise misconduct with which they are charged." *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quotation omitted). Failure to satisfy Rule 9(b)'s particularity requirement amounts to failure to state a claim under Rule 12(b)(6). *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

To satisfy Rule 9(b), claims sounding in fraud require a plaintiff to allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quotation omitted). However, "[t]he particularity requirement may be relaxed for allegations of 'prolonged multi-act schemes.'" *Burgess v. Religious*

---

[8] The court's review of a motion to dismiss is limited to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

*Tech. Ctr., Inc.*, 600 F. App'x 657, 662 (11th Cir. 2015) (citing *United States ex rel. Clausen v. Lab'y Corp. of Am., Inc.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002)). This more "relaxed standard permits a plaintiff to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud." *Id.* at 663. "Even under the relaxed requirement, however, a plaintiff is still required to allege at least some particular examples of fraudulent conduct to lay a foundation for the rest of the allegations of fraud." *Id.*

## III.  The Motions to Dismiss

### A.  The LaRocca Defendants' Motion to Dismiss

The LaRocca Defendants move to dismiss the complaint for six reasons. By their first two reasons, the LaRocca Defendants argue that the complaint should be dismissed in its entirety because its general allegations are inconsistent with the specific assertions in the attached exhibits, and it fails to comply with Rule 8. The LaRocca Defendants also move to dismiss the following counts: Counts III (unjust enrichment) and IV (FDUTPA) for failure to state a claim pursuant to Rule 12(b)(6); all counts against Blake LaRocca pursuant to Rule 9(b); and Count V to the extent it seeks a declaration regarding future or unidentified claims. As discussed below, none of these reasons merit dismissal of the complaint.

## 1.  The Complaint and its Exhibits

The LaRocca Defendants contend that Exhibit 1, which is a spreadsheet that purports to provide the specifics of the alleged fraud as required by Rule 9(b), expressly contradicts the general and conclusory allegations in the complaint that Defendants utilized a predetermined protocol as to each of the 621 patients. (Doc. 48, pp. 4-9). This Court disagrees.

First, Plaintiffs are correct in noting that this argument essentially is one of purported evidentiary sufficiency, not contradiction, and is improper on a motion to dismiss. Second, the allegations set forth in Exhibit 1 do not expressly contradict the general allegations in the complaint. To reach the opposite conclusion, the LaRocca Defendants utilized information listed in Exhibit 1 to calculate percentages that supposedly "contradict" the general and conclusory fraud allegations in the complaint. However, in doing so they cherry-picked instances of alleged inconsistency and mischaracterized the general allegations in the complaint. Moreover, the LaRocca Defendants cite no legal authority supporting dismissal of a complaint in circumstances such as these. While the LaRocca Defendants are correct that exhibits to a complaint control when they contradict conclusory allegations in a complaint, *see Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009), that simply is not the case here. Accordingly, the LaRocca Defendants' motion to dismiss on this ground is denied.

## 2.  Federal Rule of Civil Procedure 8

Next, the LaRocca Defendants argue that the complaint should be dismissed because it fails to contain a "short and plain statement" of the claims for relief as required by Rule 8(a)(2), and its allegations are not "simple, concise, and direct" as required by Rule 8(d)(1). The LaRocca Defendants contend the 104-page, 252-paragraph complaint is neither short nor plain, and the length of the complaint is not attributable to the complexity of the claims but rather to the redundant and repetitive boilerplate nature of the allegations. (Doc. 48, pp. 9-16).

The complaint complies with Rule 8. This is a complex fraud case spanning almost five years. Plaintiffs sue seventeen defendants and assert five claims, each of which must be set forth sufficiently and with particularity to meet the pleading requirements of Rules 8 and 9. While the complaint contains 252 paragraphs spanning 104 pages and includes 370 pages of exhibits, the allegations are set forth clearly and separately and purport to detail the nature, extent, and particularities of the fraud scheme. Significantly, the complaint is not rendered incomprehensible due to its length or purported repetitive and verbose nature of its allegations, and the LaRocca Defendants do not contend or suggest otherwise. To the extent the complaint contains allegations that are irrelevant to the claims or verbose/repetitive, they do not warrant dismissal. *See Athens Newspapers v. Jefferson Standard Life Ins. Co.*, 729 F.2d 1412, 1417 (11th Cir. 1984) (pleading

facts not necessary to state a claim is not grounds for dismissal of a complaint).

Accordingly, the LaRocca Defendants' motion to dismiss on these bases is denied.

### 3.  Count III – Unjust Enrichment

Next, the LaRocca Defendants argue that Count III should be dismissed

because the claim is not independent from their allegedly wrongful conduct,

namely, Defendants' alleged fraud.[9] They also argue that the claim cannot survive

because Plaintiffs did not plead it in the alternative. (Doc. 48, pp. 16-19). Neither

argument is persuasive.

To state a claim for unjust enrichment under Florida law, the plaintiff must

allege: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant

voluntarily accepted and retained that benefit; and (3) the circumstances are such

that it would be inequitable for the defendants to retain it without paying the value

thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012)

(citing *Fla. Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n.4 (Fla.

2004)). "An action for 'unjust enrichment' exists to prevent the wrongful retention

of a benefit, or the retention of money or property of another, in violation of good

---

[9] In support, the LaRocca Defendants cite *State Farm v. Lewin*, 535 F. Supp. 3d 1247 (M.D. Fla. Sept. 2021) and *Delta Air Lines, Inc. v. Network Consulting Assocs., Inc.*, 2014 WL 4347839, at *10 (M.D. Fla. Sept. 2, 2014). They also cite two Eleventh Circuit cases which quote a law review article for the proposition that a claim of unjust enrichment cannot be premised on wrongful conduct. *See Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003) (quoting Peter Birks, *Unjust Enrichment and Wrongful Enrichment*, 79 Texas L. Rev. 1767, 1783 (2001)); *Flint v. ABB, Inc.*, 337 F.3d 1326, 1331 n.2 (11th Cir. 2003) (citing the same law review article).

conscience and fundamental principles of justice or equity." *Challenge Air Transport, Inc. v. Transportes Aereos Nacionales, S.A.*, 520 So. 2d 323, 324 (Fla. Dist. Ct. App. 1988) (citing 66 Am. Jur. 2d Restitution and Implied Contracts § 3 (1964)); *see Cleveland Clinic Fla. v. Children's Cancer Caring Ctr., Inc.*, 274 So. 3d 1102, 1104 (Fla. Dist. Ct. App. 2019) (same); *Golden v. Woodward*, 15 So. 3d 664, 669 (Fla. Dist. Ct. App. 2009) (same); *Henry M. Butler, Inc. v. Trizec Prop., Inc.*, 524 So. 2d 710, 711 (Fla. Dist. Ct. App. 1988) (same); *see also Quality Diagnostic Health Care, Inc.*, 2021 WL 5157535, at *3 ("A cause of action for unjust enrichment exists when 'an entity accepts and retains benefits that it is not legally entitled to receive in the first place'") (quoting *State Farm Fire & Cas. Co. v. Silver Start Health & Rehab Inc.*, 739 F.3d 579, 584 (11th Cir. 2013)); *see also* 66 Am. Jur. 2d Restitution and Implied Contracts § 3 (2022) (recognizing that "'unjustly' could mean illegally or unlawfully").

Plaintiffs state a claim for unjust enrichment or wrongful enrichment. Count III of the complaint alleges:

> In each claim described in Exhibit 1, [Plaintiffs] conferred a benefit upon Defendants by paying their claims and these Defendants voluntarily accepted and have retained benefits from the payments conferred by [Plaintiffs].
>
> Because Defendants knowingly submitted, or caused to be submitted, charges for examinations, treatments, diagnostic imaging, and other services that were not medically necessary and lawfully rendered, the circumstances are such that it would be inequitable to allow them to retain the benefit of the monies paid.

12

> As a direct and proximate result of the above-described conduct, [Plaintiffs] have been damaged and Defendants have been unjustly enriched by at least $2.1 million.

(Doc. 1, ¶¶ 243-45).[10] As set forth above, Plaintiffs allege they conferred a benefit on Defendants by paying the PIP claims in Exhibit 1, Defendants voluntarily accepted and retained those benefits, and allowing Defendants to retain the benefit of the $2.1 million would be inequitable because the services Defendants allegedly provided were unnecessary and not lawfully rendered. These allegations are sufficient to state a cause of action for unjust enrichment.[11] *See Cleveland Clinic Fla.*, 274 So. 3d at 1104; *Challenge Air Transport, Inc.*, 520 So. 2d at 324; *Quality Diagnostic Health Care, Inc.*, 2021 WL 5157535, at *3; *Silver Start Health & Rehab Inc.*, 739 F.3d at 584; *see also State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1165 (S.D. Fla. 2015) (granting summary judgment in favor of insurer on unjust enrichment claim where insurer paid claims based on the defendants' unlawful conduct, namely, the submission of allegedly illegal and fraudulent claims for x-ray services provided to

---

[10] Count III also incorporates the allegations in paragraphs 1 through 229 of the complaint. (Doc. 1, ¶ 242).

[11] Generally, "[w]hen a defendant has given adequate consideration to [a plaintiff] for the benefit conferred, a claim of unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007). Unlawfully rendered services, however, cannot qualify as adequate consideration. Florida law supports a cause of action for unjust enrichment upon a defendant's acceptance and retention of a benefit "that it is not legally entitled to receive in the first place[.]" *Silver Start Health & Rehab Inc.*, 739 F.3d at 584.

insureds under PIP policy coverage, that it was statutory entitled to deny); *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc*., 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) (finding that insurer did not bargain for unlawfully rendered medical services, and provider's retention of payments for these services was sufficient to support cause of action for unjust enrichment).

District courts in Florida have taken opposing views on whether a claim for unjust enrichment may be premised on "wrongful" conduct.[12] *See, e.g., AIM Recycling Fla., LLC v. Metals USA, Inc*., 2019 WL 1991946, at *1-2 (S.D. Fla. Mar. 4, 2019) ("A number of courts hold that a claim of unjust enrichment may not be predicated on a wrong committed by a defendant. . . However, other courts reject this position, and maintain that Florida law makes no distinction between wrongful enrichment and unjust enrichment; these courts hold that a claim of unjust enrichment may be predicated on a wrong."). Courts finding that unjust enrichment cannot be premised on wrongful conduct have done so by relying on *Guyana* and/or *Flint*, specifically, a footnote in each case in which the Eleventh Circuit, in dicta, quotes a law review article on unjust enrichment (which itself,

---

[12] The undersigned has also taken both views. *Compare* G.*L.C. Consulting Servs. 1990 L.T.D. v. Tropicana Prod., Inc*., 2007 WL 9723898, at *4 (M.D. Fla. Nov. 19, 2007), *with Delta Air Lines, Inc.*, 2014 WL 4347839, at *10.

does not mention Florida law).[13] *See, e.g., Guyana*, 329 F.3d at 1245 n.3 ("As soon as [a] claimant relies on a wrong [to supply the unjust factor], the right on which he relies arises from that wrong, not from unjust enrichment") (quoting Peter Birks, *Unjust Enrichment and Wrongful Enrichment*, 79 Tex. L. Rev. 1767, 1783 (2001)); *Flint*, 337 F.3d at 1330 n.2 ("The law of unjust enrichment is concerned solely with enrichments that are unjust independently of wrongs and contracts") (quoting 79 Tex. L. Rev. 1767, 1783). The LaRocca Defendants rely on *Guyana*, *Flint*, and the *Tenet* line of cases, but they have not provided any Florida legal authority for the proposition that an unjust enrichment claim under Florida law cannot be premised on wrongful conduct. In the absence of any Florida law that supports their position, the LaRocca Defendants' wrongful conduct argument fails.

Even if an unjust enrichment claim may not be predicated on wrongful conduct, dismissal is not warranted. Viewing the allegations in the light most favorable to Plaintiffs, the unjust enrichment claim is adequately pled in the alternative in anticipation of Defendants claiming that they committed no wrong. *See Gov't Emps. Ins. Co. v. Kalin*, 2022 WL 613808, at *4 (M.D. Fla. Mar. 2, 2022) ("Although GEICO could have more clearly pled the unjust enrichment claim in the alternative, the Court accepts the claim as having been pled in the

---

[13] While a line of cases beginning with *Florida v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288, 1308 (S.D. Fla. 2005) are also cited in support, *Tenet* relied exclusively on G*uyana* and *Flint* in finding that wrongful acts could not support a claim for unjust enrichment.

alternative to the other claims premised on wrongful conduct. Thus, even assuming that an unjust enrichment claim may not be predicated on wrongful conduct, dismissal is not warranted."); *AIM Recycling Fla., LLC*, 2019 WL 1991946, at *2 (declining to dismiss unjust enrichment claim in a medical fraud case where the claim was adequately but not artfully pled in the alternative to wrongful conduct); *but see Lewin*, 535 F. Supp. 3d at 1267 (finding unjust enrichment claim was not pled in the alternative because the wrong could not be differentiated from the other torts alleged, "especially given that each count in the complaint incorporates the same set of paragraphs from the body of the complaint"). A different finding is not warranted simply because the complaint does not expressly allege that Count III is brought in the alternative. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009) ("Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims."); *Ocean's 11 Bar & Grill, Inc. v. Indem. Ins. Corp. of DC*, 2011 WL 3843931, at *3 (S.D. Fla. Aug. 26, 2011) ("A party need not use any special words to properly plead in the alternative; it only must be 'reasonably inferred that this is what [it was] doing.'"). Accordingly, for the reasons stated above, the LaRocca Defendants' motion to dismiss Count III is denied.

## 4. Claims against Blake LaRocca

Next, the LaRocca Defendants argue that the claims against Blake LaRocca should be dismissed because the allegations against him fail to provide the specificity required by Rule 9(b). Specifically, they contend the complaint fails to explain how Blake LaRocca furthered the alleged fraud, participated in the fraud, or how he oversaw and directed the fraud. The LaRocca Defendants also suggest the claims against Blake LaRocca should be dismissed because he is not a medical provider, owner, director, or executive at the LaRocca Clinics. (Doc. 48, pp. 19-21).

The allegations against Blake LaRocca satisfy the pleading requirements of Rule 9(b) and provide him fair notice of the claims against him. The complaint alleges that Blake LaRocca designed and oversaw the predetermined protocol, submitted or caused to be submitted bills and supporting documentation that were fraudulent, managed the LaRocca Clinics and provided billing services for them, was responsible for the recordkeeping and coding at the LaRocca Clinics, provided the advertising and marketing for the LaRocca Clinics, acted as registered agent for the LaRocca Clinics, and earned additional profits from Defendants' fraud scheme by forming two funding companies to purchase accounts receivable relating to patients who treated at the LaRocca Clinics. (Doc. 1, ¶¶ 7, 20-24, 213-19). These allegations provide the requisite specificity required by Rule 9(b).

The suggestion that the allegations against Blake LaRocca are insufficient because he is not a medical or chiropractic provider and does not own any of the clinics is unsupported by citation to legal authority and unpersuasive. Moreover, contrary to that suggestion, insurers may bring claims against individuals involved in fraud schemes regardless of whether they treated patients or owned a clinic. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Physicians Grp. of Sarasota, LLC*, 9 F. Supp. 3d 1303, 1306 (M.D. Fla. 2014); *see also State Farm Mut. Auto. Ins. Co. v. Physicians Inj. Care Ctr.*, 427 F. App'x 714, 721 (11th Cir. 2011) (affirming fraud verdict against a non-physician officer manager), *rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014). For these reasons, the LaRocca Defendants' motion to dismiss on this ground is denied.

### 5.  Count IV – Violations of FDUTPA

Next, the LaRocca Defendants argue that Count IV[14] should be dismissed for failure to state a claim because it is based on conduct—the submission of alleged fraudulent PIP claims—that is subject to the regulatory authority of Florida's Department of Financial Services ("DFS") and Office of Insurance

---

[14] In Count IV, State Farm seeks compensatory damages of at least $2.1 million for Defendants' alleged violations of the FDUTPA. State Farm alleges that Defendants engaged in unfair and deceptive acts and practices by intentionally and knowingly making or causing to be made false and fraudulent statements of material fact to State Farm in submissions for services that were not lawfully rendered by the LaRocca Clinics because they were rendered pursuant to intentional violations of PIP law and the Insurance Fraud Statute. (Doc. 1, ¶¶ 247-48).

Regulation ("OIR") and thus is exempt from the FDUTPA.[15] Specifically, they contend the conduct at issue is subject to the above authority pursuant to the 2012 amendment to the PIP statute, § 627.736(4)(i), which provides that claims denied for potentially fraudulent insurance acts under Fla. Stat. § 626.989 "shall be reported to the [DFS] Division of Investigative and Forensic Services." By adding paragraph (4)(i) to the PIP statute, the LaRocca Defendants contend the Florida legislature "placed the activity at issue in State Farm's claim squarely within the regulatory authority of the DFS." In support of this argument, the LaRocca Defendants primarily rely on *Quilty v. Envision Healthcare Corp.*, 2018 WL 2445824, at *6 (M.D. Fla. May 31, 2018), *appeal dismissed*, 2018 WL 8693942 (11th Cir. Oct. 10, 2018).[16] (Doc. 48, pp. 21-23).

---

[15] The LaRocca Defendants point to § 501.212(4)(a), (d), which provides that the FDUTPA does not apply to "[a]ny person or activity regulated under laws administered by the [OIR] of the Financial Services Commission," or "[a]ny person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the [DFS]." (Doc. 48, pp. 21-22).

[16] In *Quilty*, the plaintiff claimed that the defendant, a provider of emergency medical services, engaged in balance-billing, a prohibited practice of an out-of-network healthcare provider billing a patient for the difference between the provider's charges and the amount recovered from the patient's insurance. 2018 WL 2445824, at *1. Among other claims, the plaintiff alleged that the defendant's conduct violated the FDUTPA. *Id.* at *2. The court dismissed the FDUTPA claim, finding that pursuant to § 501.212(4), "improper balance-billing is conduct exempt from FDUTPA" because the balance-billing statutes which the defendant was alleged to have violated were part of Florida's Insurance Code and subject to the OIR's regulatory authority. *Id.* at * 6-7. Further, the court noted that Florida's HMO Act, which contains the balance-billing statutes, "specifically addresses unfair or deceptive acts and practices to be investigated by the OIR." *Id.* As such, the court determined that the exemption in § 501.212(4)(a) applied, and the plaintiff's claim could not be enforced through the FDUTPA. *Id.*

The conduct at issue is not exempt from the FDUTPA. This case is not about whether Plaintiffs reported to the DFS claims denied for potentially fraudulent insurance. Rather, this case and the conduct on which the FDUTPA claim is based concern Defendants' submission of fraudulent bills and records for medically unnecessary and unlawful chiropractic and medical services. Although the LaRocca Defendants argue that § 627.736(4)(i) "places the activity alleged here under DFS and OIR regulatory authority," they do not cite any legal authority in which the same conduct was found exempt from the FDUTPA. The LaRocca Defendants' reliance on *Quilty* is inapposite for the same reason, namely, the FDUTPA claim in that case was based on an alleged violation of a statute that prohibited balance-billing and was part of Florida's HMO Act, not the submission of alleged fraudulent PIP claims. In short, the LaRocca Defendants fail to demonstrate that the inclusion of an insurer's reporting obligation in the PIP statute subjects clinics or medical providers to the DFS's regulatory oversight, or that the 2012 PIP amendment overruled the line of cases holding that fraudulent billing of PIP claims is an activity exempt from the FDUTPA. *See, e.g., Day v. Sarasota Doctors Hosp., Inc.*, 2020 WL 7390052 (M.D. Fla. May 26, 2020.[17] Accordingly, the LaRocca Defendants' motion to dismiss Count IV is denied.

---

[17] *Day* involved a FDUTPA claim against a hospital for misrepresenting its customary charges. 2020 WL 7390052, at *1-2. In finding the hospital's unlawful billing practices were not exempt from FDUTPA, the court reasoned, "[t]o the extent [plaintiff] has alleged fraudulent activity,

## 6.  Count V – Declaratory Judgment

Finally, the LaRocca Defendants argue that Count V should be dismissed to the extent it is predicated on future or unidentified claims through the date of trial because no case or controversy exists with respect to such claims.[18] In support, they rely on *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1292-93 (M.D. Fla. 2009). (Doc. 48, pp. 23-24). Plaintiffs counter that the LaRocca Defendants misread the allegations in the complaint and their argument fails as a result. Specifically, Plaintiffs state they "do not seek a declaration today as to hypothetical claims. Instead, they properly seek a declaration as to all unpaid claims pending at the time of trial" that are the "product of an ongoing fraud scheme." Plaintiffs contend that federal courts have consistently held that insurers may pursue claims for declaratory relief with respect to unpaid fraudulent claims despite having not yet relied on them or suffered damages in circumstances such as these. (Doc. 57, pp. 19-20).

---

those allegations relate to [defendant's] billing practices for patients covered by PIP insurance." *Id*. at *3. The court noted that numerous courts had found allegations of fraudulent billing practices in the PIP context were not exempt from FDUTPA. *Id*. at *3-4.

[18] In Count V, Plaintiffs seek a declaration that the LaRocca Clinics are not entitled to be paid for any of the unpaid claims and charges submitted to State Farm to date and through the trial of this case because they knowingly made false and fraudulent statements relating to a claim and otherwise engaged in fraudulent and unlawful conduct with the intent to conceal and misrepresent material facts and circumstances regarding each claim they submitted to State Farm. (Doc. 1, ¶¶ 250-52).

Plaintiffs are correct. "To establish the existence of an actual controversy within the meaning of the Declaratory Judgment Act, the party invoking a federal court's authority must show: '(1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision.'" *Physicians Inj. Care Ctr., Inc*., 427 F. App'x at 721. Here, Plaintiffs adequately allege a substantial controversy as to future or unidentified claims through the date of trial. *See State Farm Mut. Auto. Ins. Co. v. Brown*, 2017 WL 1291995, at *2-3 (S.D. Fla. Mar. 30, 2017) ("Because State Farm alleges that Defendants have knowingly submitted or caused to be submitted thousands of fraudulent bills and unlawful supporting documentation, State Farm is not required to suffer the allegedly inevitable harm it seeks to avoid for an actual case or controversy to exist"); *State Farm Mut. Auto. Ins. Co. v. Advantacare of Fla., LLC*, 2020 WL 2630226, at *10 (M.D. Fla. May 22, 2020); *see also Physicians Inj. Care Ctr., Inc*., 427 F. App'x at 721-22 ("We do not require State Farm to suffer the harm that it sought to avoid in order to be entitled to declaratory judgment relief"). Accordingly, the LaRocca Defendants' motion to partially dismiss Count V is denied.

### B.  Bacaner's Motion to Dismiss

Bacaner moves to dismiss Count I for failure to comply with Rule 9(b) and Rule 12(b)(6). As explained below, neither ground is persuasive.

### 1.  Count I – Common Law Fraud

Bacaner contends that Count I should be dismissed for failure to satisfy Rule 9(b) because the fraud allegations in the complaint improperly lump all Defendants together; fail to allege the who, what, when, where, and how of the alleged misrepresentations; fail to allege that Bacaner submitted records to State Farm or had knowledge that others did; and fail to sufficiently allege reliance. (Doc. 49, pp. 5-11).

The fraud allegations in the complaint, including those contained in the attached spreadsheets and clinic records, satisfy Rule 9(b)'s particularity requirements. To state a claim for common law fraud under Florida law, a plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010). Where multiple defendants are involved, the complaint must contain sufficient, specific allegations with respect to each defendant rather than lumping all defendants together. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309,

1317 (11th Cir. 2007). The complaint also "should inform each defendant of the nature of his alleged participation in the fraud." *Id*. Fraud claims are subject to Rule 9(b). Fed. R. Civ. P. 9(b).

The complaint pleads the "who, what, where, when, and how" of the alleged fraud and misrepresentations as to Defendants, including as to Bacaner individually. The complaint pleads the "who" by identifying each of the LaRocca Clinics and the twelve individuals, alleging that the individuals provided unnecessary treatment and caused fraudulent bills to be submitted, and identifying the 621 patients that allegedly received the unnecessary treatment. The complaint pleads the "what" by describing in detail the allegedly fraudulent scheme and predetermined protocol. The complaint pleads the "when" by alleging the fraud scheme began in January 2017 and continues to date and by providing the time frames that each of the individual defendants engaged in the scheme. The complaint, including the attached exhibits, plead the "where" by identifying the clinic location and treating doctor. The complaint pleads the "how" by alleging that Defendants intentionally misrepresented that they provided medically necessary treatment by deliberately submitting fraudulent PIP claims and supporting documentation to State Farm. The exhibits attached to the complaint, including the spreadsheets and clinic records, provide the specifics of the "who, what, where, when, and how" of the misrepresentations made by each defendant. Specifically,

the spreadsheets identify or list each patient's claim number, the dates of treatment and loss, the chiropractors and physicians that treated each patient, the charges submitted, and the total amount billed for each patient.[19] At this stage of the proceedings, those allegations are sufficient. *See Gov't Emps. Ins. Co. v. Landau & Assocs., P.A.*, 2019 WL 12493609, at *7 (M.D. Fla. Mar. 29, 2019) (fraud claims pled with sufficient particularity under Rule 9(b) where the complaint and exhibits provided defendants with fair notice of their alleged wrongdoing); *see also Gov't Emps. Ins. Co. v. AFO Imaging, Inc*., 2021 WL 734575, at *8, 10-11 (M.D. Fla. Feb. 25, 2021) (Rule 9(b) satisfied where plaintiffs provided examples of fraudulent bills specifying the alleged misrepresentations even though the scheme occurred over several years). Further, even if the allegations did not identify each allegedly fraudulent claim and each defendant's specific misrepresentations, the fraud allegations in the complaint and attached exhibits nonetheless satisfy Rule 9(b) by providing multiple representative examples of systemic fraud.[20] *See AFO*

---

[19] More specifically, the spreadsheets identify: each of 621 patients; which clinic location the patient visited; the chiropractor that conducted the initial exam/prepared the report; the dates of the patient's first and last visits; the number of patient visits; the type and number of chiropractic treatment charges submitted for each patient; the office exam charges submitted for each patient; the number and type of imaging charges submitted for each patient; the physician that conducted the initial exam and his/her findings, opinion as to whether the patient sustained an EMC, and recommendations for care and MRIs; the dates of all exams; chiropractic and medical treatment records; sample PIP claims/bills submitted by the LaRocca Clinics to State Farm; and deposition transcript excepts from Blake LaRocca's 2018 and 2020 depositions. (Doc. 1, Exs.).

[20] Representative examples of Defendants' fraudulent bills and supporting documentation are found in exhibits 16-40 and 44 to the complaint. (Doc. 1, Exs. 16.40, 44).

*Imaging, Inc.*, 2021 WL 734575, at *8, 10-11 ("numerous representative examples [of allegedly fraudulent bills] are sufficient to survive a motion to dismiss").

Next, the complaint does not improperly lump all defendants together.[21] The allegations set forth above adequately inform each defendant of the nature of his or her alleged misrepresentations and participation in the fraud. Consequently, the fraud allegations do not impermissibly lump all defendants together as Bacaner contends. *See Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1140 (M.D. Fla. 2018) ("Other courts have also reached this nuanced distinction by approving claims lodged against multiple defendants where the activities undertaken by each defendant were alleged.").

Bacaner's contention that the complaint fails to allege that he personally submitted any records to State Farm or that he had knowledge that others submitted records is incorrect. The complaint alleges that "[f]rom approximately January 2017 to at least August 2018, Bacaner knowingly submitted, or caused to be submitted, fraudulent bills and supporting documentation from the LaRocca Clinics for services, including medical exams, performed pursuant to the

---

[21] The allegations in Count I refer to "Defendants" collectively. (Doc. 1, ¶¶ 231-35). However, the "claims" referenced in Count I are those "set forth in Exhibit 1." (*Id.*, ¶ 231). As indicated in the preceding footnote, the allegations in Exhibit 1 and the other spreadsheets identify the specifics as to each defendant. Additionally, the complaint alleges that Bacaner "implemented the predetermined protocol by providing medical exams, including those identified on Exhibits 4 and 8, that were not legitimate and were not provided to address patients' unique needs." (Doc. 1, ¶ 52).

Predetermined Protocol." (Doc. 1, ¶ 53). The complaint also identifies the initial and final exams Bacaner performed and includes allegations purporting to explain why his exams were fraudulent. (*Id.*, ¶¶ 131-38, 198-202, and Exs. 4, 8, 22, and 38).

Bacaner's contention that Plaintiffs must allege justifiable reliance to state a claim for common law fraud is also incorrect. The Florida Supreme Court eliminated the requirement that reliance be "reasonable" or "justifiable" for a plaintiff to prevail on a fraud claim. *See Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). In any event, Plaintiffs are correct in noting that insurers are entitled to rely on the representations in a clinic's bills, *see Gov't Emps. Ins. Co. v. Palm Wellness Ctr., LLC*, 2021 WL 5760734, at *7 (M.D. Fla. Dec. 3, 2021), and the complaint does in fact allege that Plaintiffs relied on Defendants' fraudulent misrepresentations (Doc. 1, ¶¶ 223-29).

For the reasons stated above, Bacaner's motion to dismiss Count I is denied.

### 2.  Count II – Civil Conspiracy

Bacaner contends that Count II should be dismissed because it fails to allege with particularity a "meeting of the minds" between Defendants as required by Rule 9(b). He also contends Count II fails to state a claim because it does not allege any overt acts in furtherance of the conspiracy. (Doc. 49, pp. 11-13).

To state a claim for civil conspiracy under Florida law, a plaintiff must allege: "(a) an agreement between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage to plaintiff as a result of the acts done under the conspiracy.'" *United Techs. Corp.*, 556 F.3d at 1271 (quoting *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So.2d 1157, 1159-60 (Fla. Dist. Ct. App. 2008)). "An agreement between two or more parties occurs when there is an express or implied agreement of two or more persons to engage in a criminal or unlawful act." *Gilison v. Flagler Bank*, 303 So.3d 999, 1004 (Fla. Dist. Ct. App. 2020). Civil conspiracy must also meet Rule 9(b)'s heightened particularity requirements. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067 (11th Cir. 2007) (applying a Rule 9(b) standard to a civil conspiracy claim under Florida law).

The complaint alleges with sufficient particularity an implied agreement between the defendants to engage in a scheme to defraud Plaintiffs by submitting bills and supporting documentation that were fraudulent. The complaint alleges:

> Each Defendant agreed to act and did act in furtherance of the common and overall objective of the conspiracy to defraud [Plaintiffs] through the fraudulent claims described throughout this Complaint.
>
> ***
>
> Defendants each knowingly agreed and conspired to conduct and participate, directly or indirectly, in the fraudulent scheme described above . . . when they submitted, or caused to be submitted, to

28

> [Plaintiffs] bills and supporting documentation that were fraudulent and unlawful.
>
> Defendants each agreed to act and did act in furtherance of the common and overall objective of the conspiracy to fraudulently obtain no-fault benefits by knowingly facilitating the submission of bills and supporting documentation to [Plaintiffs] that made intentional false and fraudulent representations[.]

(Doc. 1, ¶¶ 7, 238-39). Moreover, these allegations necessarily must be read in conjunction with the allegations detailing the fraud scheme throughout the complaint and exhibits. Specifically, the spreadsheets attached to the complaint contain sufficient factual support for the roles each defendant, including Bacaner, played in the conspiracy. These allegations are sufficient. *See Gilison v. Flagler Bank*, 303 So.3d 999, 1004 (Fla. Dist. Ct. App. 2020) (finding that the complaint sufficiently alleged a civil conspiracy where it provided sufficient facts that the parties assisted in the fraud, and that the parties had at least an implied agreement to do so); *Charles*, 988 So.2d at 1160 ("Each coconspirator need not act to further a conspiracy; each 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators'") (quoting *Donofrio v. Matassini*, 503 So.2d 1278, 1281 (Fla. Dist. Ct. App. 1987)). Accordingly, Bacaner's motion to dismiss Count II is denied.

## IV.  Conclusion

Accordingly, for the reasons stated above, it is **ORDERED AND**

**ADJUDGED** that:

(1)     The Larocca Defendants' Motion to Dismiss (Doc. 48) is **DENIED**.

(2)     Defendant Tobias Bacaner, M.D.'s Motion to Dismiss (Doc. 49) is
**DENIED**.

(3)     Defendants are directed to file their answers to the complaint on or
before **May 17, 2022**.

**DONE AND ORDERED** at Tampa, Florida, this 3rd day of May 2022.

SUSAN C. BUCKLEW
United States District Judge